-For Publication-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL S. STRAUS, LAURENCE A. STRAUS AND WILLIAM M. STRAUS, Plaintiffs, | CIVIL ACTION |
| v. | |
| UNITED STATES POSTAL SERVICE, Defendant. | NO. 16-4117 |

## OPINION

In 1966, Plaintiffs Laurence A. Straus, Michael S. Straus, and William M. Straus' ("Straus Brothers") father leased to Defendant United States Postal Service ("USPS") a building which has since housed the Richmond Station Post Office ("Richmond Station").[1] The first lease agreement provided an option for USPS to purchase the property and the land on which it stood for a fixed price. An amendment to the agreement, which was signed in 1982, also contained an option for USPS to purchase the property but for fair market value. USPS now wishes to buy the property. It maintains that it is entitled to do so for the fixed price. The Strauss Brothers disagree and have sued seeking a declaratory judgment that they have no obligation to sell the property to USPS for either a fixed price or for market value. They also claim that USPS, which still occupies the building, is a holdover tenant which owes them back rent.

Both parties filed cross motions for summary judgment. The Plaintiffs seek an order affirming their right not to sell Richmond Station and denying that USPS' has a right to

---

[1] The Straus Brothers obtained ownership of Richmond Station in 1999.

1

continued possession of and to exercise any purchase option. USPS, in turn, seeks an order compelling Plaintiffs to convey Richmond Station to USPS.

I.  **Facts**

The following facts are not in dispute between the parties. On August 1, 1966, USPS[2] and the Straus Brothers' father, Howard Straus, entered into a lease concerning Richmond Station (the "1966 Lease"). Paragraph 5 of the 1966 Lease provides USPS with six consecutive renewal options, each for a term of five years. Paragraph 6 grants USPS an option to purchase Richmond Station at certain times for a fixed price – $240,000 (the "Fixed Price Option").

In 1982, the parties executed an amendment to the 1966 Lease (the "1982 Amendment"), which became effective on July 1, 1982. Paragraph 5 of the 1982 Amendment reduces the annual rent for the property from the $18,850 set forth in the 1966 Lease to $17,054 for the remainder of the original lease term and for six renewal term options, each for a set period of five years. The 1982 Amendment also grants USPS an option to purchase the property at fair market value at any time during the remaining term of the lease and any renewal term (the "Fair Market Value Option").

USPS renewed its tenancy through the last renewal option term paying the rent rate set out in the 1982 Amendment. On July 28, 2015, one year and a few days prior to the expiration of the final renewal term, it sent a letter to exercise the option to purchase the property. The letter purported to "constitute[] notice" that USPS "has elected to purchase the fee simple title to the leased premises . . . including the underlying land, at the end of the sixth 5-year renewal option term for the purchase price of $240,000.00, as provided in Paragraph 6 of the Post Office

---

[2] The Postal Reorganization Act established USPS on August 12, 1970. *See* Pub. L. No. 91–375, 84 Stat. 719. The Post Office Department was its predecessor, and it was the original party to the lease. For the purposes of this opinion, the term "USPS" refers to the entity extant at the relevant times.

Department Lease, dated August 1, 1966." The letter did not refer to the 1982 Amendment. USPS scheduled a closing for the transfer of Richmond Station. The Straus Brothers did not appear, disputing USPS' right to exercise the Fixed Price Option. The Straus Brothers then brought this suit against USPS.

### I. Legal Standard

"[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). The Court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The same standard applies to cross-motions for summary judgment. *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp.* at 322-26); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe*, 480 F.3d at 256 (citing *Celotex*, 477 U.S. at 322-26). In ruling on a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

**II.     Analysis**

Plaintiffs' argument on their motion for partial summary judgment is that a plain reading of the 1966 Lease and the 1982 Amendment shows that the Fixed Price Option to purchase the property was superseded by the Fair Market Value Option in the 1982 Amendment. They contend further that having failed to timely pursue the Fair Market Value Option and the lease agreement for the Property now having expired, USPS is a holdover tenant at Richmond Station. In its motion for summary judgment USPS asks for a judgment directing the Straus Brothers to specifically perform – to tender title to the leased premises to USPS in accordance with the Fixed Price Option set forth in the 1966 Lease.

**1.  The Inter-Relationship of the 1966 Lease and 1982 Amendment Terms**

Preliminarily, both motions require an analysis of the inter-relationship of the terms of the 1966 Lease and the 1982 Amendment. More specifically, the question before the Court is, given the language in the relevant provisions of the two documents, what effect the Fair Market Value Option of the 1982 Amendment had on the Fixed Price Option in the 1966 Lease.[3] The focus is thus on whether the language of the provisions unambiguously supports either Plaintiffs' or Defendant's construction. Whether an ambiguity exists is a question of law that may be decided on a motion for summary judgment. *See United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008) (stating that interpretation of a contract is a question of law). However, if a

---

[3] The parties agree that federal law controls interpretation of the lease. And, they are right. "[F]ederal law governs questions involving the rights of the United States arising under nationwide federal programs." *See United States v. Kimbell Foods*, 440 U.S. 715, 726 (1979); *see also United States v. Allegheny County*, 322 U.S. 174, 183 (1944); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366-67 (1943). The United States Postal Service is unquestionably a federal program, *see* U.S. Const. Art. I, § 8, cl. 7, and "the interpretation of post office leases could conceivably affect the Postal Service's ability to carry out the mission that Congress has entrusted to it." *Powers v. U.S. Postal Serv.*, 671 F.2d 1041, 1043 (7th Cir. 1982). Thus, federal law applies to the interpretation of the lease. *See also Girard Trust Co. v. United States*, 149 F.2d 872, 874 (3d Cir. 1945) (applying federal law to leases to which the United States is a party).

review of the relevant provisions leads to the conclusion that the contract is ambiguous, the meaning of the contract is a question for the trier of fact and summary judgment will be denied. *See Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 362 (3d Cir. 1987) ("The process of interpreting a document is potentially a two-step process with the court and factfinder playing defined roles. If a contract is ambiguous, its intended meaning is determined as question of fact."). Here, where neither Plaintiffs nor Defendant has requested a jury, the meaning of the contract is for the Court to decide.

"In contract interpretation, the plain and unambiguous meaning of a written agreement controls." *Arko Exec. Servs., Inc. v. United States*, 553 F.3d 1375, 1379 (Fed. Cir. 2009) (internal citations omitted). When construing a contract, a court should strive to ascribe meaning to all of its provisions. *See Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 522 (3d Cir. 1999); *see also* RESTATEMENT (SECOND) OF CONTRACTS, § 203 (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."). Contract interpretation first requires looking to the language of the contract, which is the "strongest objective manifestation of [the] intent" of the parties. *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75-76 (3d Cir. 2011).

Contractual ambiguity arises when the words might be subject to more than one reasonable interpretation; latent ambiguity arises when the terms of a contract are made uncertain due to facts beyond the four corners of the contract. *Id.* at 76. To determine whether a contract term is ambiguous, a court will consider the words of a contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that

meaning. *Id*. However, the parties will remain bound by the "appropriate objective definition of the words they use to express their intent." *Id*. (internal citations omitted).

> a. *The Unambiguous Terms of the 1982 Amendment Preserve USPS' Fixed Price Option.*

As a preliminary matter, a review of the language of Paragraph 8 of the 1982 Amendment leads to the conclusion that the Fixed Price Option in the 1966 Lease was preserved even while an additional option – the Fair Market Value Option – was created.

Paragraph 8 reads, "This option is in addition to any other purchase options available under the lease of this property." The paragraph is preceded by Paragraphs 6 and 7, which deal with, respectively, the Fair Market Value Option and the method of determining through a series of appraisals what the Fair Market Value is at the time the option is exercised. The two words that begin Paragraph 8 – "This option" – when viewed in the context of the previous two paragraphs unambiguously refers to the Fair Market Value Option. The next sub-phrase of Paragraph 8, the words "in addition to," is a prepositional phrase indicating something that is over and above what has already been stated[4] and functions to ensure the Fixed Price Option remains in the 1966 Lease, as amended, despite granting USPS a new Fair Market Value Option. Thus, the plain text of Paragraph 8 of the 1982 Amendment discloses that the Fair Market Value Option was joined to something – in this case, the other purchase options available under the lease.[5] To read the Fixed Price Option out of the 1966 Lease, as amended, would deprive this

---

[4] "Addition," defined, is the "act or process of adding: the joining or uniting of one thing to another." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 24 (Philip Babcock Gove ed., 1993).

[5] It is apparent from the other language of the 1982 Amendment that the term "lease" in Paragraph 8 encompasses the terms of the 1966 Lease except as specifically amended. *See* Paragraph 11 of the 1992 Amendment ("All provisions of the aforementioned lease unaffected by this amendment are hereby confirmed and shall remain the same."). That conclusion is buttressed by the introductory recitals to the 1982 Amendment which defines the lease as that created in 1966, stating "W[hereas] by lease dated August 1, 1966." Similarly, the recitals refer to the "aforesaid lease."

6

phrase of its clear meaning. *See United States v. Johnson*, 43 F.3d 1308, 1310 (9th Cir. 1995) (finding in an almost identical context that the words "in addition to any other purchase options" would be deprived of any effect if the fixed price option was read out of the lease).[6]

Given the clear language of Paragraph 8, Plaintiffs' suggestion that the phrase "in addition to any other purchase options" ought to be interpreted to refer to the eminent domain powers of the federal government, granted to USPS by statute, *see* 39 U.S.C. § 401(9) (entitling the Postal Service "to exercise . . . the right of eminent domain"), is untenable. *See Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 419-20 (3d Cir. 2011) ("Where there is only one reasonable interpretation of a contract, that interpretation controls because straightforward language in [a contract] should be given its natural meaning.") (internal citations omitted).

Plaintiffs also assert that Paragraph 8 of the 1982 Amendment does not preserve the Fixed Price Option because it is "boilerplate" language used by USPS, and the same clause appears in amendments to leases that originally contained no purchase options. Assuming, without deciding, that the existence of other leases between Howard Straus and USPS are relevant and properly considered, the argument still lacks merit. The clause "in addition to any other purchase options available under the lease of this property" does not exclude the possibility that there are no other purchase options available. It unambiguously provides that available purchase options, if any, be preserved for USPS.

---

[6] Similarly, in *U.S. Postal Serv. v. JAMKE*, the Eastern District of California held that the language of the contract preserved the prior fixed price option. *U.S. Postal Serv. v. JAMKE*, 2017 WL 131991, at *7 (E.D. Cal. Jan. 11, 2017). Describing *Johnson* as having "nearly identical facts," the *JAMKE* Court reasoned as follows:

> Defendants argue that *Johnson* is inapposite because it dealt with whether the district court erred in refusing to consider parol evidence to clarify the meaning of the amendment. This argument misses the point. The *Johnson* court affirmed the district court's decision not to consider parol evidence because, as is the case here, the contract language unambiguously supported USPS's right to exercise the fixed price purchase option.

*Id.* at *7-8. The Straus Brothers point to no record evidence in this case that materially distinguishes the issue here.

Of course, this reading of the lease provides USPS with the choice between exercising its option either at a fixed price (as set forth in the 1966 Lease) or at the fair market value (under the 1982 Amendment). But this does not make the options inconsistent. Inconsistent provisions exist when "both cannot be operative at the same time." *See Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1212 (3d Cir. 1976) (applying federal law and explaining when inconsistency might exist); *cf Carbetta Enters., Inc. v. United States*, 58 Fed. Cl. 563, 567 (2003) (addition of an inconsistent contract term rescinds the earlier, inconsistent term.). "[T]he question whether provisions of two contracts are inconsistent can only be answered on a case-by-case basis; there is no litmus test for inconsistency by which [the] two contracts can be judged other than a test of common sense and plain meaning." *Bechtel Corp.*, 544 F.2d at 1212 (internal citations omitted). In this case, the Fixed Price Option and the Fair Market Value Option are not inconsistent with each other. More specifically, the Fair Market Value Option offers USPS a choice to purchase at any point during the lease. If USPS chose to purchase the property at the end of a renewal term, USPS could choose to purchase Richmond Station at either the fixed price or the fair market value. This would be no different than granting an option to sell at the lesser of two prices. Presumably, if Richmond Station's value went down instead of up, the Plaintiffs here would have wanted USPS to exercise the Fixed Price Option, and USPS would rather exercise the Fair Market Value Option. This does not lead to the conclusion that both could not be available to USPS at the same time. Thus, the contract is unambiguous that USPS had the right to exercise either option.

### 2. USPS is Entitled to Specific Performance.

USPS contends that it is entitled to specific performance of its option to purchase Richmond Station for the Fixed Price Option of $240,000. It is black letter law that an option to

purchase is in the nature of a continuing offer to sell that when accepted by the lessee completes a contract of sale. *Willard v. Tayloe*, 75 U.S. 557, 560 (1869). First, the optionee to a contract must exercise the option unconditionally and "strictly in accordance with its terms." *U.S. Postal Serv. v. Ester*, 836 F.3d 1189, 1195-96 (9th Cir. 2016) (citations omitted). Second, the party seeking specific performance must establish that there is a valid and enforceable contract, that the party substantially performed its part of the contract, and that both parties can perform. *See, e.g.*, *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430 (2d Cir. 1993); *United States v. Turley*, 2016 WL 8671924 (E.D. Okla. Nov. 18, 2016).

In this instance, the terms of the 1966 Lease Agreement provide that the government has "the option to purchase the fee simple title to the leased premises, including underlying land" for $240,000, mandating that "the Government shall give the lessor notice of election to purchase at least one year in advance of the end of the renewal period." It is undisputed that in a timely manner, USPS provided notice to each of the Straus Brothers in the form of a letter that it "has elected to purchase the fee simple title to the leased premises . . . including the underlying land . . . as provided in Paragraph 6 of the Post Office Department Lease, dated August 1, 1966." The Straus Brothers point to correspondence among them after they received that notice showing that they believed that USPS was exercising the Fair Market Value Option. Accordingly, they argue that, under the principle of *contra proferentem,* their interpretation of the Lease – that only the Fair Market Value Option was available to USPS, should prevail. This argument is untenable, not only because the *contra proferentem* construct generally is used in the interpretation of insurance contracts and is "not universally applied to other contracts," but also because it applies only where there are ambiguities in the insurance contract, at which point the ambiguities are resolved in favor of the insured. *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1257 (3d Cir.

1993). Here, the 1966 Lease and the 1982 Amendment unambiguously provide that USPS has the option of exercising either the Fixed Price Option or the Market Price Option. It opted for the later and exercised the option strictly in accordance with its terms. It thus completed the contract of sale with the Straus Brothers. Specific performance shall be granted because USPS has a valid and enforceable contract, it substantially performed its part of the contract, and Plaintiffs do not contest that both parties are able to perform.

    3. **USPS is a Holdover Tenant**

Plaintiffs argue that because USPS's lease on the Richmond Station expired on July 31, 2016, with no further options to renew and that USPS has continued to occupy the premises without paying rent, USPS is a holdover tenant and they are entitled to compensation from USPS for its continued occupancy of the Richmond Station. USPS has not challenged this contention in its responsive briefs and, has accordingly, conceded that it is a holdover tenant and owes rent to the Strauss Brothers for the period it has occupied the building through to the closing of the sale of the property to USPS. *See Jacobs v. Contract Callers, Inc.*, 2016 WL 1696818, at *3 (E.D. Pa. Apr. 28, 2016).

An appropriate order follows.

    **BY THE COURT:**

    /s/Wendy Beetlestone, J.

    _____

    **WENDY BEETLESTONE, J.**